[No. 1256.]

## HENRY JOHNSON *v.* THE STATE.

1. PRACTICE—CHARGE OF THE COURT.—A charge of the court should always be confined to, and be limited by, the facts legitimately presented by the evidence. When it goes beyond this rule, and is either palpably injurious, or in its tendency is probably injurious to the defendant, it is good ground for reversal. See a state of case wherein it was error to instruct upon the offense of receiving and concealing stolen property, knowing it to be stolen.

2. EVIDENCE held insufficient to sustain a conviction for theft.

APPEAL from the County Court of Fayette. Tried below before the Hon. John Steihl, County Judge.

The appellant was charged by information with the theft of a gold ring of the value of four dollars, the property of John Zett. His trial resulted in his conviction, and the punishment awarded was a fine of ten dollars and confinement in the county jail for one day.

John Zett, a Bohemian, testified, for the State, through an interpreter. He stated in substance that he and his wife went to church in Fayetteville, on March 6, 1881, leaving home just after breakfast and returning a short while before sundown. One window pane in his house was broken when he left, and he found three others, making four, broken on his return. Upon examination, he found that eight dollars in money had been abstracted from his trunk, during his absence, also that a ring worth four dollars, which he left hanging on the wall under his clock, had been stolen. He next saw that ring, on the eighteenth day of September, 1881, on the defendant's finger. He went to

the defendant's house and asked to see the ring, and the defendant handed it to him. The witness told the defendant that the ring was his property; which the defendant denied. The witness then told the defendant that he would send for his wife to prove it, that she would know the ring perfectly well. The witness sent for his wife and exhibited the ring to her. The ring exhibited was identified as the ring in question. It was the property of the witness. He identified it by two small cuts in the edge, which he made when he purchased it four years before, and by a small dent on the inside. When speaking to his wife on the occasion referred to, the witness spoke in the Bohemian language. He left the ring with the defendant on that occasion.

Cross-examined, the witness stated that, when he asked the defendant to show him the ring on the occasion of his visit referred to, the defendant took the ring off and handed it to him. The defendant did not tell the witness that he would surrender the ring if his wife swore to it as his property. His, the witness's, wife, did not say that the ring was not his. When the witness gave her the ring she said: "Oh no, we will not take the ring from him. We will have the constable take it." The witness denied that he displayed anger towards his wife, and cursed her on that occasion. He denied that at Warrenton he swore that he identified the ring only by a straight mark on the inside. He did not make the dent on the inside. The witness wore the ring only on Sundays and holidays. Here the witness pointed out, on the ring in evidence, two small cuts and a small dent visible only by close examination.

The State next introduced a search warrant sued out by Johann Zett against the defendant, in which the ring was described as "one gold ring with two small cuts on the edge— eighteen carats."

Mrs. Zett corroborated her husband, the first witness, reciting the details of the loss of the ring, its discovery, etc., in very much the same language. She recognized the ring by the marks described.

On cross-examination, the witness denied that her husband became angry with her and cursed her for proposing to return the ring to the defendant and have the constable take it. At the interview concerning the ring, the witness and her husband, when conversing together, spoke in Bohemian, but when they addressed the defendant they spoke in English.

The State next introduced the voluntary statement of the defendant, which is as follows:

" The State of Texas }
   v.   } Voluntary statement of Henry Johnson.
" Henry Johnson. }

" My name is Henry Johnson. I bought the ring that was found in my possession from Mr. Day's clerk in LaGrange, in December, 1880. The cause of the edges being worn was that I have been baling cotton with it. At the time I bought the ring Ran. Martin was present. I lost the ring in August last while baling cotton. Mrs. Stunken found it back for me the same day. One Sunday Mr. Zett came to my house, and said Henry Harris had told him, Zett, that I had his ring, and asked to see the ring on my finger. I showed it to him. He showed it to his wife. He said: "May be so that has been my ring." He then sent for his wife, who came. He then showed the ring to his wife. She said "no." He then got mad at his wife, and said that she did not know anything. He then said that he wanted to carry the ring to Mr. Zwernemann. I then asked her if that was her ring, and she said that she did not know. Zett then handed the ring to his wife and she gave it to me. He told her not to give it to me. She said "better you take it," and gave it to me. Zett said to me, "may be so that been my ring. I will show it to my wife. If it been ten years she will know it. If she does not say it is my ring I will give it back to you." She said three times that it was not her ring.

his<br>
" HENRY &times; JOHNSON.<br>
mark.

" Subscribed to before me this the seventeenth day of October, 1881.        P. E. FAAG, J. P. F. C."

W. M. Chandler testified, for the State, that he sold defendant a ring some time in the fall of 1880. He did not sell him the ring exhibited, but another somewhat like it. The ring he sold the defendant was solid gold, had the brand impressed below the surface, and the letter "K" stamped on the metal. There is no "K" on the ring exhibited, it is not solid gold, and the brand is stamped on the surface.

Cross-examined, the witness stated that the ring exhibited and the one sold by him to the defendant were so similar that one

unaccustomed to jewelry would readily mistake the one for the other, the difference in them being as stated. The two could easily be exchanged without the change being noticed.

Clara Johnson, wife of the defendant, testified, in his behalf, that on the Sunday Zett's house was alleged to have been entered, her husband took her young daughter and Margaret Jackson to Floyd Townsend's house, two and a half miles distant, leaving home just after breakfast, and returning about dusk. Zett returned home about one-half hour before sundown. The witness was absent on the day of Zett's visit to the defendant's, when he first came, but returned before the interview closed. She asked her husband what was the subject of discussion, and he said that Zett and his wife were claiming the ring. Mrs. Zett said: "My man believes it is his ring." The witness asked her: "Mrs. Zett, do you believe it is your ring?" and she replied that she did not. Zett then got in front of his wife, stamped his feet and abused her. Mrs. Zett again, in answer to the witness, said that she did not believe that the ring was hers; that she did not know. She then gave the ring to the defendant, and left. The defendant owned but one gold ring, and the one exhibited in court looks like it.

Dora Johnson, step-daughter of the defendant, testified that she remembered the day on which Zett's house was alleged to have been entered. She, her sister and Margaret Jackson went to Mr. Townsend's on that day with the defendant, from whence they returned after dark. She remembered when Zett called at the defendant's house and asked to see the ring, and described the occurrences very much as the other witnesses for the defense, except that this witness stated that when the ring was shown to Mrs. Zett she shook her head and said: "Oh, no, John, this is not our ring."

Floyd Townsend, testifying for the defense, located the visit of the defendant, his two daughters and Margaret Jackson to his house on the Sunday of the alleged theft. Defendant left the house of the witness, on his return, between sundown and dark.

Margaret Jackson located the visit to Townsend's on the day of the alleged theft. They left the defendant's house about nine o'clock, and the defendant started home from Townsend's between sundown and dark. The witness had worn a gold ring belonging to the defendant prior to the sixth day of March, on which Zett's house was alleged to have been entered, and be-

lieved the ring in court to be the one. She could discover no difference between it and the ring she wore.

Race Martin testified, for the defense, that he was with the defendant in December, 1880, when he bought a gold ring from Mr. Day's clerk (W. M. Chandler), and, while not positive, believes the ring exhibited to be the one.

Calvin Franklin testified that he was with the defendant, baling cotton, in August, 1881, and knew that he had a gold ring there, and lost it, and recovered it through some one who found it. He knew, also, that the defendant got a ring once at a cake cutting. He had seen him wear it, and knew of others, Margaret Jackson among the number, wearing it.

McGown testified that Zett told him after his house was entered, that he lost a ring and some money. He had another conversation with Zett after the ring was recovered. Zett told the witness that he found his ring with the defendant, but that he did not believe that the defendant took it.

The motion for new trial assailed the evidence as insufficient to support the verdict, and attacked the charge of the court as erroneous, as given, and as erroneous in refusing charges asked.

*Duncan & Meerscheidt*, for the appellant.

*J. H. Burts*, Assistant Attorney General, and *O. S. Eaton*, for the State.

WHITE, P. J. Exceptions were reserved by defendant at the time to the charge of the court as given to the jury, and also to the refusal to give the several special, requested instructions. A principal objection urged to the charge given is that it instructed the jury upon the law with regard to receiving and concealing stolen property, knowing it to have been stolen, when there was not a particle of testimony warranting, much less calling for, such an instruction.

In our opinion this ground of error is well taken, and under the particular facts of this case we can well imagine how such an error would inure to the prejudice and injury of defendant's case. Indeed it seems almost tantamount to telling the jury that, whilst there is no evidence of theft on the part of this defendant, they might infer a receiving and concealing of the stolen property. A charge should always be confined to, and be limited by, the facts legitimately presented by the evidence.

When it goes beyond this, and is either palpably or in its tendency probably injurious, it will be good ground for reversal.

But, over and above this error in the charge of the court, we are of opinion that the evidence is of itself insufficient to sustain the judgment. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 31, 1883.